## STATE v. A. T. MILLER.[1]

April 29, 1927.

No. 25,831.

**Conviction sustained by evidence.**
   The evidence supports the verdict of the jury convicting the defendant of the crime of rape.

Criminal Law, 17 C. J. p. 271 n. 41.
Rape, 33 Cyc. p. 1486 n. 12.

Defendant appealed from an order of the district court for Jackson county, Haycraft, J., denying his motion for a new trial. Affirmed.

   *E. H. Nicholas* and *H. H. Dunn*, for appellant.
   *Clifford L. Hilton*, Attorney General, *Chester S. Wilson*, Assistant Attorney General, and *B. E. Grottum*, County Attorney, for the state.

LEES, C.
   Defendant was convicted of the crime of rape and appealed from an order denying his motion for a new trial. It is contended that the order is erroneous because the evidence does not support the verdict.

   At the time of the alleged commission of the offense the prosecutrix was 19 years of age, unmarried, employed in the store of Ben Chozen, a merchant in Jackson, Minnesota, and lived with his family. The defendant was 39 years of age, married, and employed in the store of his father-in-law, A. L. Warnke. The Chozen and Warnke stores were in the same building, and the prosecutrix and the defendant had been acquainted for several months prior to Friday, July 17, 1925. Shortly after eight o'clock in the evening of that day, the prosecutrix left the Chozen house ostensibly to call on a woman by whom she had once been employed as a domestic servant. She testified that while on her way she was overtaken

   [1]Reported in 213 N. W. 740.

by the defendant, who invited her to ride with him to her destination. He was driving a Ford sedan, which she entered. He drove past the house to which she was going and out on a country road, where he stopped the car, pulled her to the rear seat and assaulted her, but before he had fully accomplished his purpose the lights of an approaching car came in sight and defendant drove back to the place where he had picked her up, going by a route which led through the streets of Jackson. Soon after the prosecutrix got out of the car, Chozen came along in his car, which she entered. Chozen charged her with having been out with the defendant and, becoming incensed at her denials, compelled her to get out of his car. When she said she would drown herself, he replied that it was the best thing she could do, and drove home, leaving her at a bridge over the Des Moines river. Later in the evening she returned to the Chozen house and was again charged with having been out with defendant. The prosecutrix testified that she was hysterical and unable to talk coherently, and that finally Chozen said: "If you can't tell it, why write it," whereupon she wrote on a scrap of paper: "I am sorry I ever gave you any reason to think I was ever with him," and a little later: "Miller has misled me, but I give you my word of honor I will never have anything to do with him from now on. Ann."

On Saturday morning when Chozen met the defendant he accused defendant of having been out with the prosecutrix the night before. A little later, when she came to the store, defendant called her aside and said: "Ann, did you tell Chozen I was out with you last night?" Turning to Chozen, who had come to the place where they were, the prosecutrix said: "Ben, I told you last night that I never was out with Mr. Miller in my life." Angered at this, Chozen told her she could not work for him any longer and sent her home. Later in the forenoon defendant went to see the county attorney, who called Chozen to his office in the afternoon. The prosecutrix accompanied him and privately told the county attorney and the sheriff that she had driven with defendant on Friday evening, but did not tell them that he had ravished her. She worked in Chozen's store on

Saturday evening, and on Sunday accompanied the Chozen family to Fox lake on a pleasure trip. On the following Wèdnesday she told Mrs. Chozen that she had been ravished. This was her first complaint to anyone. On Wednesday evening a physician was called, who examined the prosecutrix and discovered no physical evidence of her alleged violation. She testitfied that, as a result of the attack, one of her ankles was injured and swollen and her thigh bruised, but the doctor testified that he saw no bruises and that her ankle did not appear to be swollen. While he was examining her, she told him that she had been ravished.

Defendant was arrested and bound over to the grand jury after a preliminary examination. He was indicted and tried twice. He flatly denied the charge, admitting only that while driving about Jackson on the evening in question he had seen the prosecutrix on the street three times. The first trial resulted in a disagreement, and the second in a conviction. In denying a new trial, the trial judge said: "I have examined this evidence with care, and am of the opinion that whatever inconsistencies, contradictions or improbabilities that may exist are questions for the jury."

We gather from the record and the briefs and arguments of counsel that it was the theory of the defense that the story told by the prosecutrix was a pure fabrication, that Chozen induced her to tell it to avert suspicion from himself, and that, if any offense was committed, Chozen was the offender.

There are many inconsistencies in the testimony of the prosecutrix, but throughout a prolonged cross-examination she adhered to the testimony she gave on her direct examination. Considering her youth and apparent inexperience, it would seem that if the story was manufactured from beginning to end she would have broken down under the merciless cross-examination to which she was subjected. Standing alone, her testimony is not so inherently unreasonable or improbable that we can say there was error in the trial court's refusal to set the verdict aside. She testified directly and explicitly to the facts necessary to establish the crime charged. The defendant's denial was as direct and explicit. If the testimony of the prose-

cutrix was worthy of belief, it was sufficient to justify the jury in finding the defendant guilty.   State v. Lightheart, 153 Minn. 40, 45, 189 N. W. 408; State v. Schomaker, 149 Minn. 141, 182 N. W. 957; State v. Greenstein, 162 Minn. 346, 202 N. W. 892.

But defendant's counsel lay great stress upon subsequent events, contending that they overcome any weight which might otherwise be accorded to the testimony.   They point to the fact that the prosecutrix repeatedly denied that she had been with the defendant on Friday evening, to her change of front on the following Wednesday, to the fact that she continued to remain in Chozen's employment and to live in his house after his brutal conduct toward her on Friday evening and Saturday morning, and to his manifest desire to fasten a criminal charge upon the defendant.

The state meets this line of argument by pointing to the natural desire of the prosecutrix to avoid publicity, which may have been the motive which led her for a time to deny that she had been with the defendant; to defendant's admission that he had said that he had seen Chozen following the girl; to Chozen's knowledge of defendant's accusations and consequent anger; and to the improbability that Mrs. Chozen would have permitted the prosecutrix to remain in her house, or that the brother of the prosecutrix, living on a farm near Jackson and present at the trials, would have permitted his sister to remain there if Chozen was unduly intimate with her.

If the prosecutrix was nothing more to defendant than a passing acquaintance, it is difficult to understand why he should concern himself with her relations with Chozen.   The actions of both men indicate that they were suspicious and that each was ready and willing to accuse the other of improper conduct.   Jackson is a city of about 2,500 inhabitants.   Chozen and the defendant have lived there for several years.   By reason of their occupations they must be well known in the city and among the people who trade there. It is reasonable to suppose that the reputations they bore were known to some members of the jury.   The case must have attracted considerable local attention.   Under all the circumstances, it seems

to us that the jury would not be likely to convict the defendant upon a trumped up charge. The trial judge had the advantage of seeing and hearing the witnesses at two successive trials. He could hardly have failed to detect the falsity of the accusation if it were false in fact. He gave his unqualified approval to the verdict. Great weight must be given to this fact. His charge to the jury was a clear and accurate statement of the issues to be determined and of the applicable legal principles.

We conclude that the order appealed from should be affirmed and it is so ordered.

QUINN, J. (dissenting).

I am unable to concur in the conclusion that the evidence in this case is sufficient to support the verdict and therefore dissent.

STONE, J. (dissenting).

I feel that the interests of justice require a new trial.